IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MONDELĒZ GLOBAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:17-cv-_____ |
| vs. | ) | |
| | ) | Hon. Judge |
| INTERNATIONAL ASSOCIATION OF | ) | |
| MACHINISTS AND AEROSPACE | ) | Magistrate Judge |
| WORKERS, AFL-CIO, DISTRICT 8, | ) | |
| LOCAL LODGE 1202, | ) | |
| | ) | |
| Defendant. | ) | |

# EXHIBIT A

## to

## Complaint to Vacate Arbitration Award

# EDWARD B. KRINSKY, ARBITRATOR

In the Matter of Arbitration Between :
Mondelez Global, LLC :
    -and- : FMCS No. 17-52950
International Association of Machinists :
And Aerospace Workers, Local Lodge 1202 :

-----------------------------------------------------------

**Appearances**: Ogletree, Deakins, Nash, Smoak & Stewart, PC by <u>Mr. Richard L. Samson</u> and <u>Ms. Jennifer L. Colvin</u>, for the Company

Carmell, Charone, Widmer, Moss & Barr, LTD by <u>Mr. Martin P. Barr</u>, for the Union

The above-captioned parties were unable to resolve a dispute over the interpretation and application of their Agreement. From a panel of arbitrators submitted at their request by the Federal Mediation and Concilition Service, they selected Edward B. Krinsky to make a final and binding determination of the dispute.

A hearing was held at Lisle, Illinois on June 7 and 29, 2017. A transcript of the proceedings was made. At the hearing the parties had the opportunity to present evidence and testimony and to make arguments. The record was completed on August 18, 2017 with receipt by the arbitrator of the parties' briefs.

The parties did not agree on a statement of the issue.

According to the Union, the issue is: "Whether the Company violated the Agreement and/or past practice when in June, 2015 it unilaterally imposed a rest requirement and restricted the rights of bargaining unit employees from working seven consecutive days during the Sunday through Saturday calendar workweek on a voluntary basis? If so, what shall the remedy be?"

According to the Company, the issue is: "Did the Company violate Article 7 and Attachment 7 by refusing to allow employees to work a seventh straight day of work without a 24-hour period of rest and without having received a permit from the Illinois Department of Labor where allowing the employee to otherwise do so would violate the Illinois One Day Rest in Seven Act? If so, what shall the remedy be?"

The Company did not raise an arbitrability issue at the hearing. It argued [see below] that the Union failed to move the grievance to arbitration in a timely manner. In its opening statement at the hearing the Company stated, "...while we firmly believe that this grievance must be denied, we will ask you at the end to take this [the Union's delay in moving the grievance to arbitration in a timely manner] into account if ultimately you sustain this grievance and order a remedy for

1

the violation claimed here." In its brief the Company asserted that "the grievance should be dismissed as untimely."

The following language of the Agreement is relevant to the dispute:
## ARTICLE 7 – HOURS OF WORK AND OVERTIME

. . .

7.7 The Company agrees to post a sign-up sheet for sixth and seventh day and/or holiday overtime as follows:

The number of employees by classification will be published by Wednesday, 1 P.M. Similarly, said list will be published by 1 P.M. two (2) working days prior to a holiday. Employees may add or remove their names until Thursday, 7 A.M. It is understood that unanticipated breakdowns, schedule changes, or emergencies may require the Company to revise its overtime requirements.

. . .

7.12 When overtime work is required, the Company will offer overtime based on seniority within the job classifications...

. . .

7.18 If an employee works their 6th day for four (4) consecutive weeks excluding days which are exempt due to the six day workweek regulations or Holidays, the employee may accumulate a maximum of 1 bye (exemption from being forced) to be used at his or her discretion by giving the company advance notice per overtime sheet. After the employee has utilized the one bye, he or she may start to accumulate 6th days worked toward generating another bye. Based on seniority, not more than three (3) employees may utilize their bye on any given 6th day. If necessary, required work will be covered by assigning another employee.

. . .

## ATTACHMENT 7 OVERTIME

. . .

VIII. 6th and 7th Day of Work/Holiday overtime
   A. The 6th and 7th day of scheduled work will be paid at the applicable overtime rate in accordance with the Contract. Weekend overtime for an employee is that scheduled overtime that occurs between 7:00 AM at the beginning of the 6th day of their scheduled work week and the conclusion of the third shift of the 7th day of their scheduled work week, which is 7:00 AM.

   . . .

   B. 6th and 7th day of work/holiday overtime will be scheduled by seniority. Management will post a sign-up sheet in accordance with Article 7.7.
      (1) The number of employees by classification for anticipated overtime will be published by Wednesday, 1:00 PM. Similarly, said list will be published by 1:00 PM two (2) working days prior to a holiday. Employees may add or remove their name until Thursday, 7:00 AM. It is understood that unanticipated breakdown, schedule changes, or emergencies may require the Company to revise its overtime requirements.

(2) Employees will be scheduled as follows:
   a) Senior employees will be scheduled by classification from the sign up sheet.
   b) If there is an insufficient number of volunteers, the required overtime will be assigned to the least senor employee in the classification.

...

X. Overtime Conditions

Employees can elect to work overtime by seniority in four (4), eight (8) or twelve (12) hour blocks on weekend overtime with the following conditions:

. (8) Eight hour openings will be filled first by seniority with (8) eight hour volunteers.

. If there are insufficient volunteers for an (8) eight hour shift, volunteers who sign to work the first or second 4 (four) hours will be scheduled by seniority.

. If all openings are not filled in this manner, the Company will require/assign the least senior employee(s) to fill the open slots.

...

. At no time will an employee be forced when there is an eligible volunteer

...

## ARTICLE 21 – GRIEVANCE PROCEDURE AND ARBITRATION

21.1 For the purpose of this Agreement, the term "Grievance" means any disagreement between the Union or employee in the bargaining unit and the Company with respect to the application of this Agreement...

...

21.6 Any grievance which has not been satisfactorily settled in the preceding steps may be referred in writing by either party within thirty (30) working days from the date the written answer to Step 3 is given, to binding arbitration. The arbitrator shall be selected according to the following procedure:

The Company and the Union shall jointly request the Federal Mediation and Conciliation Services to submit the names of five (5) arbitrators. The Company shall have the right to strike two (2) names from the list, and the Union shall strike two (2) names from the list. This shall be done alternately, one at a time with a "flip of a coin" determining the first party to strike a name. The arbitrator remaining shall be selected to conduct the arbitration proceeding. Selection of the arbitrator shall be made by the parties with ten (10) working days after receipt of the list of arbitrators from the Federal Mediation and Conciliation Service, and the arbitration hearing shall be set as soon as possible.

21.7 The arbitrator shall have no authority to add to, subtract from, modify, change, alter, or ignore in any way the provisions of this Agreement or any expressly written amendment or supplement thereof. The award of the arbitrator shall be final and binding upon the Union, the Company, and the employees.

**Facts:**

At the hearing the parties stipulated to the following:

(1) "Since at least 2003 employees were permitted to work seven consecutive days on a volunteer basis during the Sunday through Saturday calendar workweek without having 24 hours of rest."

(2) On May 1, 2015 Company counsel Colvin wrote a letter to Hugo Chaviano, Esq. Director, Illinois Department of Labor re: Advisory Opinion regarding One Day Rest in Seven Act. The parties stipulated that there was no response received to the letter. The letter requested an advisory opinion about the meaning of "Working Seven Consecutive Days in a Calendar Week" and "What is 24 Consecutive Hours of Rest?" and "Are Local 399 Employees Exempt from the ODRISA?"

(3) On July 16, 2015 IAMAW District 8 Business Representative Sarpolis wrote a letter to Hugo Chaviano, Esq. Director, Illinois Department of Labor re: Advisory Opinion regarding One Day Rest in Seven Act: Mondelez International. The parties stipulated that there was no response received to the letter. In the letter Sarpolis gave as an example, "A day shift employee works 7:00 am to 3:00 pm. The employee worked Sunday through Friday." He then posed several questions: "(1) Does that employee's additional period of rest allowed at the close of each working day begin at 3:00 pm Friday? (2) Does that period of rest equal eight (8) hours or sixteen hours or what number of hours? (3) When does the twenty-four hours of rest begin? Friday 11:00 pm, Saturday 7:00 am or when? (4) How does a Collective Bargaining Agreement effect the outcome of a complaint? (5) District 8, as well as the other two (2) unions involved, would welcome a joint meeting with your office and Mondelez to clarify the above questions and to seek a remedy to the above referenced questions."

(4) The decision made in this case applies to the one other grievance on the same identical issue.

It is undisputed that for many years prior to June, 2015 Mondelez and its predecessor companies at the Naperville plant allowed employees, on a voluntary basis, to work seven consecutive days during the Sunday through Saturday workweek, and in the bargaining for the 2013 Agreement, neither party made any proposals regarding the Illinois One Day of Rest in Seven Act [ODRISA.]

4

There is nothing in the record to show that prior to 2013 the Company or its predecessors requested permits from the Illinois Department of Labor [IDOL] to allow employees, on a voluntary basis, to work seven consecutive days during the Sunday through Saturday workweek.

In 2013 the Compay's new Human Resources Director, Weeks, became aware of the existence of [ODRISA]. The Company interpreted ODRISA to require it to get permits from IDOL to allow employees, on a voluntary basis, to work seven consecutive days during the Sunday through Saturday workweek. Beginning in October, 2013 and into 2015 the Company requested permits from IDOL and received acknowledgements of the requests, but never received documentation indicating that the permits had been granted.

The Company consulted with the Union but no agreement was reached about whether their long-standing practice was in compliance with ODRISA, and as indicated above the parties did not receive responses from IDOL to their requests for advisory opinions about the interpretation of ODRISA.

In June, 2015 the Company, seeking to comply with ODRISA as it understood the Act's requirements, unilaterally implemented a change in the past practice and no longer allowed employees, on a voluntary basis, to work seven consecutive days during the Sunday through Saturday workweek without having 24 hours of rest, except during period covered by permits which the Company had requested from IDOL. Outside of those permit periods the Company would not allow employees, on a voluntary basis, to work seven consecutive days during the Sunday through Saturday workweek, unless it had a good faith belief that there was a business need requiring such scheduling which could not be satisfied by adjusting schedules.

On June 10, 2015 the Union filed a grievance protesting the Company's action. The Company denied the grievance at Step 2 of the grievance procedure on June 17th, and at Step 3 on July 29th. On August 4th the Union notified the Company that it wanted to advance the grievance to arbitration. In its letter the Union stated, "There is currently a case of the exact nature with the Chicago Mondelez Plant [Chicago Bakery]. If you are in agreement, District 3 would like for the findings of that case to apply to this grievance." On August 28th, citing "a distinct location with a distinct contract, and with distinct facts and circumstances surrounding its application of ODRISA to its distinct workforce and processes," the Company did not agree to have the findings of the Chicago Bakery arbitration apply to the Naperville grievance. On September 4, 2015 the Union informed the Company of its intent to arbitrate the matter and sent the Company FMCS forms to be used for the selection of an arbitrator. A panel of arbitrators was received in December, 2015 or January, 2016.

In the first quarter of 2016 the Company inquired of the Union about the status of moving the matter to arbitration. Union Business Representative Marchese indicated that the Union wanted to wait until a decision was made in the Chicago Bakery arbitration. There was no testimony or

5

evidence presented indicating that during 2016 there was any further communication between the parties pertaining to the scheduling of the arbitration.

The Union moved the matter to arbitration on January 19, 2017 when its counsel asked the Company to agree to request a second panel of arbitrators from the FMCS. The parties then selected the undersigned as the arbitrator. Human Resources Manager Weeks testified that when he learned in 2017 that the Union wanted to proceed with the selection of an arbitrator, he was surprised because he thought, given the length of time that had elapsed, that the Union had made a decision not to move forward. He testified that the Company did nothing to delay the arbitration.

While this dispute was pending, the same issue was in dispute at the Chicago Bakery plant, involving a different local of the IAMAW and different contract language, but the same past practice. That matter was taken to arbitration and a decision was issued by Arbitrator Greco on November 23, 2016. Thereafter, the Company moved in Federal District Court to have the decision vacated. The Union moved to have the decision confirmed. On July 27, 2017 the District Court issued a decision confirming the Greco arbitration decision when it granted the Union's motion for summary judgment. In its brief the Company indicated its intent to appeal the District Court's decision to the Seventh Circuit Court of Appeals.

**Discussion:**
As indicated above, the Company did not raise an arbitrability issue at the hearing, although it later did so in its brief. Because it was not raised as an issue at the hearing, and thus the Union did not present evidence or testimony about arbitrability, the arbitrator views the Company as having waived that issue. Rather, as argued by the Company at the hearing, the arbitrator will consider the question of delay if there is a remedy ordered.

Nothing in the Agreement prohibits employees from working seven consecutive days on a volunteer basis during the Sunday through Saturday calendar workweek without having 24 hours of rest. Article 7 and Attachment 7 address scheduling of 6th and 7th day overtime and contain no such prohibition, and indicate that overtime will be offered by classification seniority. The arbitrator reads these sections to allow employees to work seven consecutive days on a volunteer basis during the Sunday through Saturday calendar workweek whether or not they have 24 hours of rest. Moreover, as described above, the parties are in agreement that there was a past practice for many years allowing employees to work seven consecutive days on a volunteer basis during the Sunday through Saturday calendar workweek without having 24 hours of rest. The Company asserts that the past practice was terminated in 2013. The arbitrator disagrees.

A long-standing mutually understood and implemented past practice continues during the life of an Agreement and subsequent Agreements unless a party gives notice to the other party that

it is terminating the practice, and the parties then have the opportunity to bargain about the issue in the negotiations for the new Agreement. Here the Company did not notify the Union that it was intending to terminate the past practice of allowing employees to work seven consecutive days on a volunteer basis during the Sunday through Saturday calendar workweek without having 24 hours of rest, either before or during the negotiations for the present (2013-2017) Agreement.

In 2013, the Company changed its approach to scheduling in order to comply with what it understood to be the requirements of ODRISA, by applying to IDOL for permits, but that did not change the parties' practice of permitting employees to work seven consecutive days on a volunteer basis during the Sunday through Saturday calendar workweek without having 24 hours of rest.

In June, 2015, the Company again changed its approach to scheduling when it no longer allowed employees to work seven consecutive days on a volunteer basis during the Sunday through Saturday calendar workweek without having 24 hours of rest where it had not sought permits from IDOL for the weeks in question. This change was made by the Company after the new Agreement was in effect. In the arbitrator's opinion, the Company had not met the conditions which would have allowed it to change the long-standing past practice by which such work was permitted by the Company on a voluntary basis whether or not the Company had applied for IDOL permits. Nothing in the Agreement bars the continuation of the past practice.

The Company was obligated to continue the practice during the life of the Agreement unless there was an agreement with the Union to change it. Without such an agreement to change the practice, the Company could have notified the Union of its intent to end the practice and that could then have been the subject of bargaining for the next Agreement. The Company could not simply end the practice unilaterally during the term of the Agreement.

In Arbitrator Greco's decision in Chicago Bakery, which was made part of the record in this case, there is extensive discussion of past practices and the manner in which they may be changed or ended. The arbitrator is in agreement with Greco's analysis in which he ruled that the long-standing practice at Chicago Bakery remained in effect and was not properly terminated, the same long-standing practice which has existed at the Naperville plant which is the subject of this arbitration.

ODRISA is not mentioned in the Agreement. There is a reference in Section 7.18 to "the six day workweek regulations," but no persuasive explanation was given suggesting the meaning of that reference, whether to ODRISA or to something else. The parties are in agreement that ODRISA must be complied with, but they interpret the Act's requirements differently. The Union argues that the arbitrator does not have jurisdiction to interpret the Act but, as the Company points out

in its brief, the Union has filed grievances in past years asserting that the Company was in violation of ODRISA. Apparently none of those grievances were taken to arbitration.

Nothing in the Agreement states that the arbitrator has jurisdiction to interpret statutes. It is clear at both Articles 21.1 which defines "grievance," and Article 21.7 which sets forth the arbitrator's jurisdiction, that the parties' intended to limit the arbitrator's authority to interpreting the Agreement. That being the case, the arbitrator views his jurisdiction as limited to interpreting the Agreement and the past practices which the parties have followed in interpreting it, although given the history of grievance filings citing ODRISA, he views it as appropriate for him to consider ODRISA at least insofar as to make sure that the provisions of the Agreement and the past practices are not clearly violative of the Act. The record does not include any decision, prior to the Chicago Bakery decision of Arbitrator Greco, in which an arbitrator has construed the provisions of ODRISA in the course of interpreting the Agreements between Mondelez or its predecessors, and the unions representing the employees.

For reasons explained further below, the arbitrator is not persuaded that the parties' long-standing practice violates ODRISA, and thus he will not alter his conclusion that the past practice should be continued at least for the duration of the current Agreement.

Arbitrator Greco addressed the relationship between the past practice and ODRISA in his Chicago Bakery decision. He found that compliance with ODRISA did not negate the continuation of the past practice, the same past practice at issue in the present case. He relied on testimony by former IDOL General Counsel Willis, and a letter which Willis wrote in 2013 giving IDOL's approval to a side agreement negotiated between the City of Pekin, Illinois and its police union which allowed police to voluntarily work seven consecutive days, including voluntary overtime.

Willis wrote that such scheduling under that voluntary side agreement did not violate ODRISA. Willis' testimony in the Chicago Bakery case was made a part of the record in the present case. In it Willis testified that IDOL had not previously considered the effect of collective bargaining agreements when interpreting the Act, but found the Pekin side agreement to be in compliance with the Act because it was voluntary, there was oversight by the union to ensure it was voluntary, and there was a business necessity prompting the parties to seek approval of the arrangement. While recognizing that there was no side letter in the case before him, Arbitrator Greco stated, "but there is a binding past practice dating back to the mid-1980's which has been incorporated into the parties' agreement. The mutuality expressed in the Pekin side letter therefore is akin to the mutuality expressed in the past practice." Greco went on to state that Willis' letter "was approved by then-IDOL head Castigan, [which] therefore establishes that the IDOL then took the official position that employees could work seven consecutive days in a calendar workweek without 24 hours of continuous rest." Greco stated further, "while the letter may have no precedential value, it nevertheless shows that state law is unclear regarding how the ODRISA is administered. As a result, I find that such uncertain state law does not supersede the agreement and the past practice which permits the assignment of said work."

8

The Federal District Court affirmed Greco's decision, stating "...as the Arbitrator properly concluded, there is no clear mandate in state law regarding the administration of ODRISA that would prohibit [the Company] from allowing employees with limitations to voluntarily decide to work seven consecutive days without a 24-hour period of rest...As the Arbitrator pointed out, the former IDOL General Counsel issued an advisory opinion in 2013 that actually supported the Union's position that employees could voluntarily chose to work without the 24-hour period of rest and waive their rights under ODRISA...The Arbitrator properly concluded that there was no well defined and dominant public policy that would supersede the CBA and the past practice relating to the assignment of work and overtime."

In its brief the Company argues at length that its interpretation of ODRISA is correct, and that the Willis advisory letter should not be viewed as precedential or as an official interpretation of ODRISA by IDOL. As recited in the facts section above, IDOL has not responded to the parties' inquiries about how ODRISA is to be interpreted, and the arbitrator is not willing to conclude that the Company is correct that continuation of the past practice would be violative of ODRISA, especially in light of the District Court's decision citing the IDOL General Counsel's letter and affirming the Greco award, and the Court's finding that "such uncertain state law does not supersede the agreement and the past practice which permits the assignment of said work."

The Company also argued in its brief that the arbitrator should rule in the Company's favor based on the decision of Arbitrator Kossoff in Jewel Food Stores Inc. and Teamsters, Local 710, 2009 WL 9419862 (March 19, 2009). It should be noted that the Jewel decision was made several years prior to General Counsel Willis' letter finding that the City of Pekin side letter did not violate ODRISA. Arbitrator Greco considered the Jewel case in which Arbitrator Kossoff concluded that for some 10 years the employer did not violate the contract when it refused to let employees work seven consecutive days in a calendar workweek without 24 hours of continuous rest because it was following ODRISA. The past practice at Jewel was to not allow employees to work such schedules without a permit given by IDOL, and the union was seeking a ruling from the arbitrator which would require Jewel to schedule the overtime without IDOL permits, which Arbitrator Kossoff declined to do agreeing with the Company's interpretation of ODRISA.

Arbitrator Greco contrasted the facts in Jewel with those in Chicago Bakery where a "longstanding past practice of allowing such seven-day work was incorporated into the current agreement." As has already been discussed, he did not view the practice at Chicago Bakery as violating ODRISA, given the testimony and evidence before him. The District Court decision affirmed Arbitrator Greco's decision and said, with respect to the Jewel case, "such...decision falls far short of creating a clear public policy that would justify [Mondelez's] actions in this case." Given Greco's interpretation of the Jewel case, as affirmed by the District Court, the arbitrator does not view the Kossoff decision as determinative of the present case.

In its brief the Company argues that its interpretation of ODRISA was affirmed by IDOL in 2011 and 2015 in response to complaints about the way the Company and its predecessors were implementing the 24 hour rest period in ODRISA. In letters from ODRISA dated August 9, 2011 and April 28, 2015 IDOL did not find that the Company was in violation of the Act, and cited the provisions of ODRISA: "1. Employees must be given twenty-four consecutive hours of rest in every calendar week...2. Permits to allow employees to work the seventh day on a voluntary basis may be requested from the Department of Labor..." These complaints involved the question of how to calculate the start and end of ODRISA's required 24-hour rest period. They did not involve the question of whether the parties' past practice of allowing employees to work seven consecutive days on a volunteer basis during the Sunday through Saturday calendar workweek without having 24 hours of rest was in violation of ODRISA. Those letters from IDOL do not clearly address the past practice, and as already discussed, the Federal District Court has determined that the "uncertain state law does not supersede the agreement and the past practice which permits the assignment of said work."

In conclusion, the arbitrator finds that the Company violated Article 7 and Attachment 7 of the Agreement and past practice when in June 2015 it unilaterally restricted the rights of bargaining unit employees to work seven consecutive days during the Sunday through Saturday calendar workweek on a voluntary basis without a 24-hour period of rest and without having received a permit from the Illinois Department of Labor.

As indicated below, the arbitrator is ordering a make whole remedy for the affected employees. As discussed above, the Company has asked that the remedy be offset because, the Company alleges, the Union was responsible for the lengthy delay which occurred in advancing this case to arbitration.

Prior to 2017, the last communication between the parties about proceeding to arbitration occurred during the first quarter of 2016. At that time, Union Business Representative Marchese told the Company that it was the Union's preference not to proceed until the Chicago Bakery arbitration was completed. There is nothing in the record indicating that the Company voiced any objection to doing that or that it wanted to proceed with the selection of an arbitrator.

As quoted above at Article 21, the Agreement provides that selection of the arbitrator shall be made by the parties within ten (10) working days after receipt of the list of arbitrators from the Federal Mediation and Conciliation Service, and the arbitration hearing shall be set as soon as possible. It further states that a coin flip will determine which party will have the first strike from the list. Nothing in the record suggests that the Company urged the Union to comply with the time limits and selection procedure; moreover, after the Union informed the Company about its desire to wait until the Chicago Bakery case was completed, the Company did not object or insist on compliance with the selection procedure, or suggest that any delay would be the responsibility

of the Union. Had the Company done so, the Union might have decided to proceed to arbitration more expeditiously. The Greco decision was issued in late November, 2016 and the Union advanced the case to arbitration promptly thereafter. Under these circumstances, the arbitrator has concluded that both parties were responsible for the delay in bringing the case to arbitration and that no offset is warranted.

Based upon the above facts and discussion, the arbitrator hereby makes the following AWARD:

The Company violated Article 7 and Attachment 7 of the Agreement and past practice when in June 2015 it unilaterally imposed a rest requirement and restricted the rights of bargaining unit employees to work seven consecutive days during the Sunday through Saturday calendar workweek on a voluntary basis.

The Company is hereby ordered to:
1) Immediately reinstate the weekend overtime procedure that was in effect prior to June, 2015 whereby employees were allowed, on a voluntary basis, to work a seventh straight day of work without a 24-hour period of rest and without having received a permit from the Illinois Department of Labor.

2) Make whole all employees who, since the Company changed the weekend overtime procedure in June, 2015, lost money as a result of the Company preventing them from voluntarily working seven consecutive days during the Sunday through Saturday calendar workweek.

The arbitrator will retain jurisdiction over this matter to resolve any dispute which may arise over the implementation of this Award.

Dated this 31st day of August, 2017 at Madison, Wisconsin

Edward B. Krinsky, Arbitrator