IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONDELEZ GLOBAL LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17 C 8628 |
| ) | |
| INTERNATIONAL ASSOCIATION OF ) | |
| MACHINISTS AND AEROSPACE ) | |
| WORKERS, AFL-CIO, DISTRICT ) | |
| 8, LOCAL LODGE 1202, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This matter is before the court on plaintiff Mondelez Global LLC's motion for summary judgment and defendant International Association of Machinists and Aerospace Workers, AFL-CIO, District 8, Local Lodge 1202's motion for summary judgment. For the reasons stated below, the Court grants the union's motion and denies Mondelez's motion.

### Background

Back in the 1930s, Illinois enacted the One Day of Rest in Seven Act (ODRISA). The statute provides, with certain exceptions, that employers "shall allow every employee . . . at least twenty-four consecutive hours of rest in every calendar week in addition to the regular period of rest allowed at the close of each working day." 820 ILCS 140/2(a). Another section of the statute requires an employer to post a designation of each employee's "day of rest" and states that "no employee shall be

required to work on the day of rest so designated for him." *Id.* 140/4. Another provision of ODRISA states that the Director of the state's Department of Labor "shall grant permits authorizing the employment of persons on days of rest" under the statute and, among other things, "shall give due consideration to business necessity and economic viability in granting such permits." *Id.* 140/8.

Mondelez and the union have been parties to a series of collective bargaining agreements dating back many years. In particular, they were parties to a collective bargaining agreement (CBA) that was in effect from June 16, 2013 through June 16, 2017 covering employees at Mondelez's Naperville bakery, which produces all Triscuit snack crackers sold in North America. The CBA expressly contemplates the possibility of employees working seven days in a week. *See* Def.'s Answer, Ex. 1 (CBA), Art. 7.5-7.7; *id.* Attachment 7, § VIII.A-C.

Apparently as far back as anyone can remember, Mondelez permitted employees represented by the Union to work, on a voluntary basis, seven consecutive days during the week without a 24-hour period of rest and without Mondelez obtaining a permit from the Illinois Department of Labor (IDOL). In the fall of 2013, Mondelez's human resources department decided to seek guidance from the IDOL. From October 2013 to May 2015, the company requested permits when employees were scheduled to work seven consecutive days without a 24-hour period of rest. Mondelez received acknowledgements of the requests but never received documentation indicating that the permits had been granted. Nor did it, however, receive a rejection or any indication that the IDOL believed the company was violating the law.

In June 2015, Mondelez unilaterally decided to stop allowing employees to

voluntarily work seven consecutive days. The union filed a grievance in accordance with the CBA's grievance procedure, but Mondelez denied the grievance. Both the company and the union sought legal opinions from the IDOL, but the IDOL did not respond. In accordance with the CBA, the parties submitted the grievance to binding arbitration.

On August 31, 2017, the arbitrator ruled in favor of the Union. *See* Compl., Ex. A (arbitrator's decision). Mondelez and the union stipulated that employees had been able to work seven days in a week "on a volunteer basis" since at least 2003. The arbitrator found that neither side had brought up ODRISA during negotiations for the 2013 CBA and that in 2015, Mondelez had unilaterally changed past practice by precluding employees from working seven days in a week. The arbitrator concluded that there had been a long-standing and mutually understood practice permitting employees to work seven days in a week and that such a practice "continues during the life of an Agreement and subsequent Agreements unless a party gives notice to the other party that it is terminating the practice, and the parties then have the opportunity to bargain about the issue . . . ." *Id.* at 6-7. The arbitrator further concluded that Mondelez "was obligated to continue the practice during the life of the Agreement unless there was an agreement with the Union to change it." *Id.* at 7.

The arbitrator also discussed the issue of compliance with ODRISA. He overruled Mondelez's contention that continuation of its past practice would violate the statute, agreeing with another arbitrator's finding in a separate case that application of ODRISA in this situation was "uncertain" and did not supersede the parties' agreement and their past practice.

In conclusion, the arbitrator directed Mondelez to reinstate its previous weekend

3

overtime procedure permitting employees to work a seventh straight day on a voluntary basis and to make whole employees who had lost money since the company's unilateral change of its past practice.

Mondelez then filed the present suit, seeking to vacate the arbitrator's decision. The Union filed a counterclaim seeking enforcement of the decision. As indicated earlier, both parties have moved for summary judgment.

## Discussion

Summary judgment is appropriate where a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In making this determination, all "facts must be viewed in the light most favorable to the nonmoving party." *Scott v. Harris,* 550 U.S. 372, 380 (2007). In this case, however, there are no disputed material facts; Mondelez does not challenge the arbitrator's factual determinations. *See* Pl.'s Mem. in Support of Mot. for Summ. J. at 2 n.1.

Mondelez asserts that the arbitrator's award should be vacated as contrary to public policy because it requires the company to violate ODRISA. "Judicial review of arbitration is extremely limited." *Prate Installations, Inc. v. Chi. Reg'l Council of Carpenters,* 607 F. 3d 467, 470 (7th Cir. 2010). In the labor law context, "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had final say on the merits of awards." *United*

*Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596 (1960).

Nonetheless, a reviewing court should vacate an arbitration award if the arbitrator's interpretation of the collective bargaining agreement was "contrary to public policy." *Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000). And "[i]f the contract as interpreted by [the arbitrator] violates some explicit public policy, [a court is] obliged to refrain from enforcing it." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). The public policy must be "well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general consideration supposed public interests." *Id*. (internal quotation marks omitted). A violation of a statute or some other positive law is the clearest example of a violation of public policy, and "no arbitrator is entitled to direct a violation of positive law." *EEOC v. Ind. Bell Tel. Co.*, 256 F.3d 516, 526 (7th Cir. 2001).

The Court overrules the union's contention that Mondelez waived its public policy argument by taking the grievance to arbitration instead of seeking a pre-arbitration declaratory judgment in court. As Mondelez points out in its reply, the Supreme Court has, in three different instances, issued decisions analyzing the public policy basis for vacating an arbitration award. *See Eastern Associated Coal Corp., supra*; *W.R. Grace & Co., supra*; *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29 (1987). All three cases arose in the context of a post-arbitration petition to vacate, and the Court never so much as hinted that this was too late to raise the point. In addition, a pre-arbitration declaratory judgment action likely would have been premature, as it would have been based on the not-yet-realized possibility that an arbitration award

5

might run afoul of public policy.

"[T]he question of public policy is . . . ultimately one for the courts." *Chrysler Motor Corp. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 959 F.2d 685, 687 (7th Cir. 1992). With that in mind, the Court agrees with the Fifth Circuit's rejection of the contention that agreeing to arbitration waives the public policy defense to an arbitration award: "courts are the ultimate arbiters of public policy, not arbitrators." *Gulf Coast Indus. Workers Union v. Exxon Co., U.S.A.*, 991 F.2d 244, 248 n.5 (5th Cir. 1993).

The Court also overrules the union's argument that Mondelez's public policy argument based on ODRISA is preempted by federal labor law. Although a state may not regulate activity that the National Labor Relations Act (NLRA) expressly or arguably protects or prohibits, *see Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 65 (2008) (so-called *Garmon* preemption), the NLRA does not preempt a state law simply because it regulates a term of employment that may be a subject of bargaining. *See Ft. Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21-22 (1986); *520 S. Michigan Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1128 (7th Cir. 2008). ODRISA, as currently interpreted by Mondelez, merely regulates or implements a general term of employment and thus is not subject to *Garmon* preemption. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 754-56 (1985). And although federal labor law also preempts state (and federal) regulation of conduct in the labor arena that Congress intended to remain unregulated, *see Chamber of Commerce of U.S. v. Brown*, 554 U.S. at 65 (so-called *Machinists* preemption) the union offers no viable argument that ODRISA runs afoul of this rule. Finally, although the Labor Management Relations Act preempts state law causes of

6

action that require a court to interpret a collective bargaining agreement, *see Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985), this case does not involve a state law cause of action. For these reasons, the Court overrules the union's contention that Mondelez's public policy argument is preempted by federal labor law, and turns to the merits of Mondelez's contention.

The Court concludes that the arbitrator's decision was not contrary to a "well defined and dominant" public policy. *Titan Tire Corp. of Freeport v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus., & Serv. Workers Int'l Union*, 734 F.3d 708, 716 (7th Cir. 2013). ODRISA, quoted earlier, requires employers to "allow" employees a day of rest each week and prohibits employers from "requir[ing]" an employee to work on her designated day of rest. This language suggests that a practice permitting employees to voluntarily work a seventh day during a week—particularly in a workplace where employees are represented by a labor union—does not run afoul of a "well defined and dominant" legal prohibition. To put it another way, Mondelez's longstanding previous practice did not "require" employees to work seven days, and nothing in the company's practice hinted that it did not "allow" employees a day of rest each week. Rather, Mondelez permitted workers to *volunteer* to work a seventh day at their option.

In addition, the arbitrator cited testimony by IDOL's former general counsel, given in a parallel arbitration concerning Mondelez's Chicago bakery, regarding an opinion he issued in 2013 giving IDOL's approval to an agreement negotiated between the City of Pekin and the union representing Pekin police officers that allowed officers to voluntarily work seven consecutive days, including voluntary overtime. The agreement did not

7

require Pekin to request permits from the IDOL. The former IDOL general counsel testified that the agency had not previously considered the effect of collective bargaining agreements when interpreting ODRISA but found Pekin to be in compliance because the arrangement was voluntary and there was oversight by the union to ensure this, as well as a business necessity prompting the parties to seek approval of the arrangement.

This reflects that the application of ODRISA is not as cut-and-dried as Mondelez contends and that the company's newly-found reading of the statute does not represent a "well-defined and dominant" public policy. The Court also notes that the same former general counsel of IDOL testified that the agency's position was that if it did not respond to a request for a permit, the requestor was free to proceed under the assumption that the request had been approved. As the Court has indicated, Mondelez did put in requests for permits during the relevant period and heard nothing—in particular, the agency did not reject its requests.

In sum, the cited provision of ODRISA, as it has been administered by the IDOL, allows parties to contract around it, which is exactly what Mondelez and the union have done for many years. Accordingly, the arbitrator's decision was not contrary to a "well defined and dominant" public policy. And as the arbitrator correctly concluded, MG was not entitled to unilaterally change a long-standing mutually understood and implemented past practice, particularly one effectively memorialized in the CBA, without bargaining with the union.

## Conclusion

For the reasons stated above, the Court grants the union's motion for summary judgment [dkt. no. 31] and denies Mondelez's motion for summary judgment [dkt. no.

27]. The Court directs the Clerk to enter judgment in favor of defendant International Association of Machinists and Aerospace Workers, AFL-CIO, District 8, Local Lodge 1202, and against plaintiff Mondelez Global LLC, confirming the August 31, 2016 arbitration award by arbitrator Edward Krinsky and directing plaintiff to comply with the terms of the arbitration award.

Date: January 2, 2019

_____
MATTHEW F. KENNELLY
United States District Judge